UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STRIKE 3 HOLDINGS, LLC,

                            Plaintiff,

        v.

JOHN DOE INFRINGER IDENTIFIED AS USING IP
ADDRESS 162.84.207.72,

                          Defendant.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

23-CV-998
(Vitaliano, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Strike 3 Holdings, LLC, commenced this action against Defendant John Doe infringer identified as using IP address 162.84.207.72 on February 7, 2023, seeking damages and injunctive relief under the Copyright Act, 17. U.S.C. § 101 *et seq.*, for Defendant's alleged unauthorized use of Plaintiff's adult motion pictures (the "Films"). *See generally* Dkt. No. 1. Plaintiff filed an amended complaint on August 28, 2023. *See* Dkt. No. 12.

Currently pending before this Court, on a referral from the Honorable Eric N. Vitaliano, United States District Judge, is Plaintiff's motion for default judgment against Defendant. *See* Dkt. No. 26; June 24, 2024 Dkt. Order. For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted.[1]

I.    **Background**

      A.    **Factual Allegations**

The following facts are taken from the complaint, Plaintiff's motion for default judgment, and the attachments filed in support of Plaintiff's motion. The facts are assumed to be true for the

---

[1] Alison Futter, a summer intern who is a second-year law student at the University of Michigan Law School, is gratefully acknowledged for her assistance in the research and drafting of this report and recommendation.

purposes of this motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Text Order (E.D.N.Y. Jan. 9, 2024) (same); *Doe v. Hyassat*, No. 18-CV-6110 (PGG) (OTW), 2024 WL 1955354 (S.D.N.Y. May 3, 2024) (same).

Plaintiff, a Delaware limited liability company headquartered in Camden, Delaware, is the registered owner of copyrighted adult films (the "Films").  Dkt. No. 12 ¶¶ 2, 11, 28, 45; *see also* Dkt. No. 12-1.  Plaintiff distributes the Films through adult websites and the sale of DVDs.  Dkt. No. 12 ¶¶ 2-3.

Defendant is an individual currently residing in Brooklyn, New York.  Dkt. No. 13 ¶ 12.  Plaintiff alleges that Defendant used BitTorrent—"a system designed to quickly distribute large files over the Internet" by connecting "to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users"—to illegally download and distribute approximately 45 Films "over an extended period of time."  Dkt. No. 12 ¶¶ 4, 17, 22-26.

By way of background, to track instances where its Films are being shared across the BitTorrent network, Plaintiff developed an infringement detection system called "VXN Scan."  *Id.* ¶ 27.  This system establishes a direct connection with IP addresses that have shared digital media files of Plaintiff's Films across the BitTorrent network.  *Id.* ¶¶ 29-30.  VXN Scan can then download the ".torrent files" from these IP addresses and use them to download the corresponding media files.  *Id.* ¶ 32.  These files are compared to Plaintiff's copyrighted motion pictures to determine if they infringe on Plaintiff's copyrights.  *Id.* ¶ 33.  VXN Scan uses information in the

metadata of the file to, in turn, download the file and verify whether it is the same as Plaintiff's copyrighted Films. *Id.* ¶ 35.

Here, Plaintiff determined that internet protocol ("IP") address 162.84.207.72 downloaded, copied, and distributed 45 of Plaintiff's Films. *Id.* ¶¶ 37, 41; *see also* Dkt. No. 12-1. Plaintiff subsequently served a subpoena on Verizon, the internet service provider ("ISP") associated with the IP address, to discover the true subscriber associated with the IP address. *See* Dkt. No. 12 ¶¶ 49, 50. Verizon responded to the subpoena and identified Defendant's father as the subscriber and provided an associated residential address in Brooklyn, New York. *Id.* ¶¶ 12, 53.

After receiving Verizon's response to the subpoena, Plaintiff reviewed publicly available social media data for the subscriber and other individuals who resided at the same residence and had sufficient access to the IP address during the period of infringement. *Id.* ¶ 54.

Plaintiff also discovered that during the period of infringement, a single BitTorrent client, called "qBittorrent," was observed being used to download and distribute files using IP address 162.84.207.72. *Id.* ¶ 57. Plaintiff contends that the use of a single BitTorrent client indicates that only one individual was using IP address 162.84.207.72 to download and distribute works using the BitTorrent protocol. *Id.* ¶ 58. Plaintiff also logged BitTorrent network activity emanating from the same IP address that involved works other than the Films, including movies, music, books, software, TV shows, and other works. *Id.* ¶¶ 59, 61. This consistent and prolonged history of BitTorrent activity indicates that the infringer is unlikely to be a houseguest or infrequent visitor. *Id.* ¶ 61.

Plaintiff contends that publicly-available records indicate strong matches between the BitTorrent activity identified and Defendant. *Id.* ¶ 62. Specifically, Defendant's publicly-available social media pages indicate that he is employed as a biomed technical engineer for a

physician group and is skilled in image capture—specifically, Acronis software. *Id.* ¶¶ 63, 65. The additional evidence gathered by Defendant includes digital files related to Defendant's career and Acronis. *Id.* ¶¶ 64, 66. In addition, based on Defendant's technical background, Plaintiff contends that it is likely that Defendant instituted password protections on the router that was used to engage in the infringement, or that he likely relied on the factory-set password protections. *Id.* ¶¶ 68-71.

### B. Procedural History

On February 7, 2023, Plaintiff filed a complaint against Defendant for copyright infringement pursuant to 17 U.S.C. § 101 *et seq.*, seeking permanent injunctive relief, minimum statutory damages for each infringed work attorneys' fees and costs, and pre-and-post-judgment interest. *See generally* Dkt. No. 1.

As explained above, Defendant was initially only known to Plaintiff by his IP address. *See* Dkt. No. 12 ¶¶ 47-48; *see also* Dkt. No. 12-1. Thus, on February 15, 2023, Plaintiff filed a motion for leave to serve a third-party subpoena prior to a Rule 26(f) conference on Verizon to obtain Defendant's identifying information. *See* Dkt. No. 6. On February 16, 2023, the Court granted Plaintiff's motion. *See* Dkt. No. 7. In the order granting Plaintiff's motion, the Court stated, "[U]ntil such further Order of the Court, the case identified in the caption above shall be litigated in the name of a 'John Doe' defendant, regardless of what information is ultimately disclosed pursuant to the Subpoena." *Id.* at 4. Plaintiff subsequently served the subpoena on Verizon on or about February 17, 2023. *See* Dkt. No. 9.

On August 25, 2023, Plaintiff filed a motion for leave to file unredacted versions of its amended complaint and proposed summons as *ex parte* documents on a provisional basis and for an extension of time to serve Defendant with the amended complaint. *See* Dkt. No. 10. On August

28, 2023, the Court granted Defendant's motion and extended the service deadline to November 23, 2023. *See* Dkt. No. 11. The order stated that "[u]nless expressly authorized by the Court, Plaintiff shall not file any document on the public docket that contains the defendant's real name and/or address" and included a requirement that "[w]ithin 60 days of the service of this Order, the defendant must show cause, in writing, why the First Amended Complaint and related documents should not be filed publicly in unredacted form, and the name of the defendant substituted for John Doe." *Id.* ¶¶ 4-6.

On August 28, 2023, Plaintiff filed an unredacted copy of its first amended complaint *ex parte*, Dkt. No. 13, and simultaneously filed a public, redacted version that omitted Defendant's identity, Dkt. No. 12. The first amended complaint is substantially similar to the original complaint except that it identifies Defendant by name and provides Defendant's address in Brooklyn, New York. *Compare* Dkt. No. 1 *with* Dkt. No. 12.[2]

On September 7, 2023, the Court issued a summons under seal as to Defendant, Dkt. No. 16, along with a redacted summons on the public docket, Dkt. No. 17. On September 19, 2023, Plaintiff filed the summons returned executed—both under seal and in a public, redacted format— indicating that on September 8, 2023, Defendant was served with the amended complaint at his residential address in Brooklyn, New York by leaving a copy with his mother who also resides there. *See* Dkt. Nos. 18, 19.

---

[2] On the same day, Plaintiff also filed a notice of voluntary dismissal of its claim against "John Doe subscriber assigned IP address 162.84.207.72." *See* Dkt. No. 14. In the notice, Plaintiff indicated that it was not voluntarily dismissing its "claims against the party currently identified as 'Defendant John Doe infringer identified as using IP address 162.84.207.72.'" *Id.* On August 29, 2023, the Court voluntarily dismissed defendant "John Doe subscriber assigned IP address 162.84.207.72" pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *See* Dkt. No. 15.

Defendant did not timely respond to the complaint.  On December 8, 2023, Plaintiff filed an *ex parte* letter motion for leave to electronically file a request for a certificate of default and motion for default judgment *ex parte*, or, alternatively, to file the documents on the public docket. Dkt. No. 21.

On December 18, 2023, the Court entered an order granting in part and denying in part Plaintiff's motion.  *See* Dec. 18, 2023 Dkt. Order.  The Court allowed Plaintiff to file a request for a certificate of default and motion for default judgment under seal, not *ex parte*, in accordance with the Court's August 28, 2023 order and other cases from this district allowing plaintiffs to file requests for default and motions for default judgment under seal.[3]  *See* Dec. 18, 2023 Dkt. Order (citing *Strike 3 Holdings, LLC v. Doe*, 21-CV-4366 (JMA) (SIL) (Aug. 7, 2021 Order); *Malibu Media, LLC v. Coon*, 18-CV-55 (DRH) (SIL) (Nov. 21, 2018 Order)).

On December 22, 2023, Plaintiff filed a redacted request for a certificate of default, Dkt. No. 23, and simultaneously filed an unredacted version under seal, Dkt. No. 24.  On January 9, 2024, the Clerk of this Court entered a certificate of default against Defendant.  Dkt. No. 25.

On January 25, 2024, Plaintiff filed a redacted motion for default judgment, Dkt. No. 26, and simultaneously filed an unredacted version under seal, Dkt. No. 27.  Plaintiff's motion for default judgment includes: (1) a notice of motion (Dkt. No. 26); (2) a memorandum of law (Dkt. No. 26-1); (3) an affirmation from Plaintiff's counsel (Dkt. No. 26-2); (4) a certification from Jessica Fernandez, Esq., senior in-house counsel for General Media Systems, LLC, the owner of Plaintiff (Dkt. No. 26-3); (5) a copy of the amended complaint (Dkt. No. 26-4); (6) a copy of the certificate of default (Dkt. No. 26-5); (7) a report from the Department of Defense regarding

---

[3] On December 19, 2023, Plaintiff filed a letter-motion to amend the Court's December 18, 2023 order and permit Plaintiff to file its request for a certificate of default and motion for default judgment *ex parte*, not under seal.  Dkt. No. 22.  The Court denied the motion on December 22, 2023.  *See* Dec. 22, 2023 Dkt. Order.

Defendant's military status (Dkt. No. 26-6); and (8) a proposed form of default judgment (Dkt. No. 26-7).  Plaintiff also submitted an affidavit of service indicating that Plaintiff mailed a copy of the motion to Defendant at his last known residential address.  *See* Dkt. Nos. 26-8, 28.  An unredacted version of the aforementioned motion papers was also filed on the same date.  *See* Dkt. No. 27.

On June 24, 2024, Judge Vitaliano entered an order referring Plaintiff's motion to the undersigned for a report and recommendation.  *See* June 24, 2024 Dkt. Order.

## II.    Legal Standard

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment."  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a); *see Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)).  "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment."  *Esquivel*, 2023 WL 6338666, at *3 (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that the court can infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (internal quotations and citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).

III.    **Jurisdiction and Venue**

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

A.    **Subject Matter Jurisdiction**

The Court has original jurisdiction over Plaintiff's copyright claims pursuant to 28 U.S.C. § 1338(a), which states, "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights." *See DISH Network L.L.C. v. 786 Wireless World, Inc.*, No. 21-CV-5730 (AMD) (RML), 2024 WL 708229, at *2 (E.D.N.Y. Jan. 3, 2024), *report and recommendation adopted*, 2024 WL 1092498 (E.D.N.Y. Mar. 13, 2024) ("In this case, the court has subject matter jurisdiction over DISH's claims pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S.C. §§ 101, et seq.").

B.    **Personal Jurisdiction**

"A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *BASF Corp.*, 2023 WL 8853704, at *5 (internal quotations and citation omitted).

Here, Plaintiff properly served Defendant by leaving a copy of the summons and amended complaint at his Brooklyn residence with Defendant's mother, who also lives there. *See* Fed. R. Civ. P. 4(e)(2)(B); *see also* Dkt. No. 19; Dkt. No. 12 ¶ 56. Accordingly, the Court has personal jurisdiction over Defendant.

### C.    Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1); *see also* 28 U.S.C. § 1400(a) (copyright cases may be brought "in the district in which the defendant or his agent resides or may be found").  Here, venue is proper in this district because Defendant resides in this district.  *See* Dkt. No. 13 ¶ 12.

## IV.    <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2</u>[4]

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *See Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal citations and quotation marks omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion.  Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to

---

[4] The Local Rules of the United States District Court for the Southern and Eastern Districts of New York were updated on July 1, 2024.  As set forth in Local Rule 1.1, "[t]hese Local Civil Rules take effect on July 1, 2024 [] and govern actions pending or filed on or after that date.  For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on June 30, 2024 will govern."  Thus, the previous Local Rules are applicable here.

the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment," and must mail these three items to the "*last known residence*" of the defaulting party (if an individual).  Loc. Civ. R. 55.2(b)-(c) (emphasis added).

Here, Plaintiff has complied with Local Civil Rules 7.1 and 55.2(b).  Plaintiff's motion includes a notice of motion (Dkt. No. 26), a memorandum of law (Dkt. No. 26-1), and an affidavit from Plaintiff in accordance with Local Civil Rule 7.1 (Dkt No. 26-2).  Plaintiff also attaches the amended complaint, certificate of default, and a proposed form of default judgment to its motion in accordance with Local Civil Rule 55.2(b).  *See* Dkt. Nos. 26-4, 26-5, 26-7.

Plaintiff has also complied with Local Civil Rule 55.2(c).  According to the affidavit of service, Plaintiff served Defendant with a copy of the default judgment motion at his last known residential address located in Brooklyn, New York.  *See* Dkt. Nos. 26-8; 28.

Accordingly, Plaintiff has complied with Local Civil Rules 7.1 and 55.2.

## V.    Compliance with the Servicemembers' Civil Service Relief Act

The Servicemembers Civil Relief Act ("SCRA") requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."  *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).  "The court lacks the

power to excuse compliance with th[is] statute." *Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018).

Here, Plaintiff submits an affirmation from Plaintiff's counsel that attaches a report from Sam Yousefzadeh, Director of the Manpower Data Center at the Department of Defense, indicating that Defendant was not on active duty at the time of default. *See* Dkt. Nos. 26-2, 26-6; *see also* Dkt. No. 27-6. This is sufficient to establish compliance with 50 U.S.C. § 3931. *See Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *5 n.3 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).

## VI.    **Liability**

In the amended complaint, Plaintiff asserts one count of copyright infringement against Defendant. *See* Dkt. No. 12 ¶¶ 72-77.

"Under the Copyright Act of 1976, as amended, copyright protection attaches to 'original works of authorship'—prominent among them, literary, musical, and dramatic works—'fixed in any tangible medium of expression.'" *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300-01 (2019) (quoting 17 U.S.C. § 102(a)). The Copyright Act grants copyright owners the exclusive rights to reproduce the copyrighted work, "prepare derivative works based upon the copyrighted work[,]" distribute copies of the copyrighted work to the public, and publicly perform and display the copyrighted work. 17 U.S.C. § 106(1)-(6). A person or entity that violates a copyright owner's exclusive rights is liable for copyright infringement. 17 U.S.C. § 501; *see also Strike 3 Holdings, LLC v. Doe*, No. 18-CV-5305 (DRH) (SIL), 2020 WL 6875260, at *3 (E.D.N.Y. Nov. 12, 2020), *report and recommendation adopted*, 2021 WL 21532 (E.D.N.Y. Jan. 4, 2021); *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-CV-2978 (ADS) (ARL), 2017 WL 4564763, at *2 (E.D.N.Y. Oct. 11, 2017) (citing 17 U.S.C. § 501).

"To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Fema Test Answers, LLC v. Forest Smith*, No. 22-CV-1108 (MKB), 2024 WL 3178705, at *4 (E.D.N.Y. June 26, 2024) (quoting *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) and *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see also Kennedy v. Medgen, Inc.*, No. 14-CV-5843 (ADS) (AYS), 2016 WL 6585812, at *3 (E.D.N.Y. Apr. 19, 2016) ("A *prima facie* case of copyright infringement is established by showing ownership of a valid copyright and a violation of the exclusive right of use."), *report and recommendation adopted*, 2016 WL 6601450 (Nov. 5, 2016)). "The Copyright Act of 1976 defines copyrightable subject matter as 'original works of authorship fixed in any tangible medium of expression.'" *Fema Test Answers, LLC* (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 411 (2017) and quoting 17 U.S.C. § 102(a)).

"'To satisfy the second element, a plaintiff must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work.'" *White v. DistoKid*, No. 22-CV-2205 (VEC) (GWG), 2024 WL 3195471, at *3 (S.D.N.Y. June 24, 2024) (quoting *Abdin*, 971 F.3d at 66)). "Copyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability, [] and a user does not have to share copyrighted works in order to infringe a copyright." *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) (citations omitted).

Applying these standards to the allegations in the amended complaint, Plaintiff has established Defendant's liability for infringement of Plaintiff's copyrights to the Films.

### A.      Plaintiff's Ownership of Valid Copyrights in the Films

Plaintiff alleges that it is the owner of the copyrights to the Films and that the copyrights have been registered with the United States Copyright Office. *See* Dkt. No. 12 ¶ 45. In addition, Plaintiff attaches Exhibit A to the complaint, which sets forth a list of the Films, their copyright registration numbers, and the dates they were registered with the United States Copyright Office. *See* Dkt. No. 12-1. By failing to plead or otherwise defend against Plaintiff's amended complaint, Defendant has admitted these allegations. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (on a motion for default judgment, the Court must accept as true the well-pleaded allegations in plaintiff's complaint); *see also Stokes v. Hombres Lounge, Inc.*, No. 19-CV-3434 (LDH) (CLP), 2020 WL 9814097, at *3 (E.D.N.Y. Oct. 7, 2020) (accepting as true plaintiff's allegations as to defendant's liability for copyright infringement on a motion for default judgment).

Moreover, although Plaintiff did not attach the certificates of registration for the Films, "which ordinarily would constitute *prima facie* evidence of the validity of the copyright[s] under 17 U.S.C. § 410(c), on a motion for default, courts in this Circuit have accepted the registration number as alone sufficient" to establish ownership and registration of a valid copyright and "have taken judicial notice of copyright registrations as published in the Copyright Office's registry." *Stokes*, 2020 WL 9814097, at *3 (holding that plaintiff established ownership of valid copyrights by providing their registration numbers); *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *2 (E.D.N.Y. Aug. 14, 2020) (same); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("The district court was entitled to take judicial notice of Microsoft's federal copyright registrations, as published in the Copyright Office's registry.").

Here, Plaintiff has provided the registration numbers of the 45 Films, and the Court has verified their registrations.[5] *See* Dkt. No. 12-1.  Moreover, as in similar cases filed in this district, Plaintiff has identified each of its Films by its "file hash," which is "an alpha-numeric value of a fixed length that uniquely identifies data."  Dkt. No. 12 ¶ 20; *see also Strike 3 Holdings,* LLC, 2020 WL 6875260, at *3 ("Plaintiff clearly identifies each one of the Films by its 'digital fingerprint,' known as a 'file hash,' and asserts that it is the owner of the copyrights on the Films.").

Accordingly, the Court accepts as true Plaintiff's allegations that it is the owner of valid copyrights to the Films and finds that Plaintiff has established the first element of a copyright infringement claim against Defendant.

## B.    Originality and Infringement

Plaintiff has also established that the Films are original works and that Defendant copied the Films.

A work is "original" if it was "independently created by the author (as opposed to copied from other works), and [] it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc.*, 499 U.S. at 345 (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990)).  The "minimal degree of creativity" standard is "extremely low," and "[t]he vast majority of works make the grade quite easily, as they possess some creative spark." *Id.*  A plaintiff can establish originality based on the author's creative choices involving the "choice of timing, location, and subject matter" of the works. *Renna v. Queens Ledger/Greenpoint Star Inc.*, No. 17-CV-3378 (DRH) (SIL), 2019 WL 1061259, at *3 (E.D.N.Y. Feb. 13, 2019).  On a default judgment motion,

---

[5] The Court verified the copyright registration of each Film by searching for the registration numbers on the United States Copyright Office's Public Registry using the following link: https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First (last visited July 10, 2024).  *See Stokes*, 2020 WL 9814097, at *3 (indicating that the court verified copyright registration numbers).

the Court can also infer originality from the plaintiff's claim of authorship of the works. *See Balhetchet*, 2020 WL 4738242, at *3 (inferring originality from allegations in complaint).

With respect to copying, the term "is shorthand for the infringing of any of the copyright owner's . . . exclusive rights described in [section] 106" of the Copyright Act. *Lowery v. Fire Talk LLC*, No. 19-CV-3737 (LDH) (RER), 2020 WL 5441785, at *2 (E.D.N.Y. June 29, 2020) (internal quotations and citation omitted), *report and recommendation adopted*, 2020 WL 5425768 (E.D.N.Y. Sept. 10, 2020). "Section 106 of the Copyright Act grants owners of a copyright the 'exclusive right[] to do and to authorize [the reproduction of] the copyrighted work in copies.'" *Id.* (quoting 17 U.S.C. § 106).

Here, Plaintiff alleges that it is the owner of the Films, which it describes as "high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality." Dkt. No. 12 ¶¶ 2-3. This is sufficient to meet the "minimal burden" of showing that the Films possess some "minimal degree of creativity." *See Balhetchet*, 2020 WL 4738242, at *3 ("Plaintiff has established the second element of copyright infringement through the allegations in the Complaint, and that the originality of the Video can be inferred from Plaintiff's claim to be the author of the Video."); *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *6 (E.D.N.Y. Jan. 3, 2019) (holding that plaintiff established originality by alleging that he was the sole creator of the subject image, which he described as "original and unique"), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019).

Plaintiff also alleges that Defendant copied constituent elements of the Films by downloading and distributing the Films without Plaintiff's authorization, permission, or consent. *See* Dkt. No. 12 ¶¶ 74-75. Specifically, VXN Scan collected evidence of Defendant's infringement

16

by identifying ".torrent" files that download and distribute unauthorized copies of Plaintiff's works, Dkt. No. 12 ¶¶ 32-35, and using those ".torrent" files to download file pieces of the infringing movie files that were uploaded by Defendant, *id.* ¶¶ 27-44, 74. This is sufficient to establish that Defendant copied "constituent elements" of Plaintiff's Films and thus infringed Plaintiff's copyrights to the Films. *See Strike 3 Holdings, LLC*, 2020 WL 6875260, at *3 (holding that plaintiff established liability for copyright infringement by alleging that defendant "downloaded, copied, and distributed a complete copy" of the films and providing the most recent date and time of defendant's unauthorized access to the films); *Malibu Media, LLC v. Greenwood*, No. 17-CV-1099 (PAE) (SLC), 2019 WL 7580083, at *3 (S.D.N.Y. Dec. 17, 2019) (finding that plaintiff established defendant's liability as a matter of law where it alleged that defendant had downloaded and copied the plaintiff's films without authorization), *report and recommendation adopted*, 2020 WL 209140 (S.D.N.Y. Jan. 14, 2020).

Plaintiff has also established that Defendant was the infringer of the Films. Plaintiff determined that the IP address associated with the acts of infringement was a residential address where Defendant resides. Dkt. No. 12 ¶¶ 37, 41, 54-55; *see also* Dkt. No. 12-1. As explained above, Plaintiff discovered that during the period of infringement, a single BitTorrent client was used to download and distribute files through Defendant's IP address, which indicates that only one individual was using the IP address to download and distribute works using the BitTorrent protocol. *See* Dkt. No. 12 ¶¶ 57-58. Based on other works downloaded during the infringement period, including those that relate to Defendant's career and hobbies, Plaintiff determined that Defendant was the infringer. *Id.* ¶¶ 59-66. Plaintiff also determined that based on Defendant's technical background, he was likely to use password protection on the router associated with the IP address. *Id.* ¶¶ 67-71.

In sum, these allegations are sufficient to establish that "[D]efendant was the user behind the IP address who shared the copyrighted material[.]" *Strike 3 Holdings, LLC v. Banigo*, No. 23-CV-5664 (HG) (LB), 2024 U.S. Dist. LEXIS 64189, at *7 n.2 (E.D.N.Y. Apr. 8, 2024) (holding that plaintiff established defendant's personal involvement in the infringement by alleging that defendant had a technical background, was the only adult male occupant of his house, and that infringement by the subject IP address ceased shortly after defendant would have learned of plaintiff's subpoena to his internet provider), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 78116, at *1 (E.D.N.Y. Apr. 29, 2024); *Malibu Media, LLC v. Mantilla*, No. 18-CV-01369 (JAM), 2020 WL 6866678, at *4 (D. Conn. Nov. 20, 2020) (granting motion for default judgment only after plaintiff submitted supplemental evidence that the subscriber was the infringer, including that the subscriber lived alone and that his occupation and interests strongly corresponded to activity at the IP address); *Malibu Media, LLC v. Funderburg*, No. 13-CV-02614 (RMD), 2015 WL 1887754, at *2 (N.D. Ill. Apr. 24, 2015) (holding that plaintiff plausibly alleged that the infringing user was defendant by offering evidence linking defendant's IP address to bit-exchanges involving hundreds of digital media files in three months).

For these reasons, this Court finds that Plaintiff has established that the Films are original works and that Defendant copied the Films in violation of the Copyright Act. This Court therefore respectfully recommends that default judgment be entered in favor of Plaintiff and against Defendant with respect to liability.

## VII.  **Damages**

As Defendant's liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

"Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet*, 2020 WL 4738242, at *3. A plaintiff may submit documentary evidence or detailed affidavits to support their damages claim. *Chen*, 2023 WL 2583856, at *14.

Plaintiff seeks permanent injunctive relief; minimum statutory damages for each infringed work pursuant to 17 U.S.C. § 504(a), (c); statutory filing fees and service costs pursuant to 17 U.S.C. § 505; and post-judgment interest pursuant to 28 U.S.C. § 1961(a). *See* Dkt. No. 12, at 11-12; *see also* Dkt. No. 26-7. The Court addresses each request below.

## A.    Permanent Injunctive Relief

Plaintiff seeks a permanent injunction enjoining Defendant from infringing any of Plaintiff's copyrighted Films and ordering Defendant to delete and permanently remove the Films from each of the computers under his possession, custody, or control. *See* Dkt. No. 12, at 11.

Section 502(a) of the Copyright Act provides that any court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Thus, courts generally grant permanent where liability has been established and there is a threat of continuing infringement. *See Island Software & Computer Serv., Inc.*, 2006 WL 1025915, at *2 ("[W]hen a copyright plaintiff has established liability and a threat of continuing infringement, he is entitled to an injunction"); *see also Richard Feiner & Co. v. Turner Ent. Co.*, No. 96-CV-1472 (RO), 1998 WL 78180, at *2 (S.D.N.Y. Feb. 24, 1998) (noting that it is an abuse of discretion for a court to deny a permanent injunction where copyright liability has been established and a threat of continuing infringement exists). Further, "[a] court may grant a permanent injunction on a motion for default judgment." *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015).

"A plaintiff seeking an injunction must show: '(1) irreparable injury in the absence of an injunction, (2) the inadequacy of monetary damages alone, (3) that the balance of hardships tips in its favor, and (4) that a permanent injunction would not disserve the public interest.'" *Strike 3 Holdings, LLC*, 2020 WL 6875260, at *4 (quoting *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 637 (S.D.N.Y. 2018)).

Here, all four factors weigh in Plaintiff's favor. First, Plaintiff has alleged that BitTorrent allows users to "connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users." Dkt. No. 12 ¶ 17. Thus, Plaintiff argues that "without an injunction, nothing will stop Defendant's continuous and ongoing distribution [of] pieces of copies of Plaintiff's works to other BitTorrent users," which will also "facilitat[e] future infringement by others." Dkt. No. 26-1, at 28. "Such continuous infringement will irreparably injure Strike 3." *Strike 3 Holdings, LLC*, 2020 WL 6875260, at *4; *Malibu Media, LLC v. Doe*, No. 18-CV-0055 (DRH) (SIL), 2020 WL 2770921, at *4 (E.D.N.Y. Apr. 20, 2020) (finding irreparable harm where defendant used BitTorent to share plaintiff's movies with others), *report and recommendation adopted*, 2020 WL 2769412 (E.D.N.Y. May 28, 2020); *see also Strike 3 Holdings, LLC v. Doe*, No. 21-CV-08808 (CRB), 2023 WL 3102567, at *3 (N.D. Cal. Apr. 26, 2023) (finding irreparable harm because "[d]ue to the nature of the BitTorrent network, it is impossible to trace the extent and magnitude of the damage attributable to defendant's illegal use and distribution of the works at issue." (cleaned up)); *Strike 3 Holdings, LLC v. Doe*, No. 20-CV-5122, 2022 WL 952728, at *4 (E.D. Pa. Mar. 30, 2022) (finding permanent injunctive "appropriate against a repeat infringer who has actively distributed copyrighted works, to ensure the misconduct does not recur." (internal quotation marks and citation omitted); *Strike 3 Holdings, LLC v. Doe*, No. 18-CV-01173 (TSH), 2019 WL 1277561, at *7 (N.D. Cal. Mar. 20, 2019) (finding irreparable

20

harm "due to the nature of BitTorrent," which makes "tracing the extent and magnitude of the damage [] impossible"); *Malibu Media, LLC v. Ofiesh*, No. 16-CV-202 (FJS) (DEP), 2017 WL 2633526, at *3 (N.D.N.Y. June 19, 2017) (finding irreparable harm where defendant's use of BitTorrent allowed him to "distribute copies of the copyrighted works to other peers continuously, thereby facilitating future infringement[ ]").

Second, "Defendant's ability to continue his infringement absent an injunction shows that monetary damages are insufficient to provide Plaintiff with relief." *Strike 3 Holdings LLC*, 2020 WL 6875260, at *4; *Rovio Entm't, Ltd.*, 97 F. Supp. 3d at 547 (finding monetary damages insufficient to provide relief where there existed a danger that defendant might continue infringing).

Third, the balance of hardships favors Plaintiff as "it is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." *Strike 3 Holdings, LLC*, 2020 WL 6875260, at *4 (cleaned up); *see also WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (holding that defendant could not be legally harmed by injunction barring it from continuing to stream plaintiff's programming). Indeed, an injunction will not prejudice Defendant – it will only prohibit him from continuing to infringe Plaintiff's copyrighted works and require him to destroy his unauthorized copies of the Films. *See* 17 U.S.C. § 503(b); *see also Malibu Media, LLC v. Baker*, No. 18-CV-3263 (JGK) (BCM), 2020 WL 3978302, at *7 (S.D.N.Y. June 18, 2020) ("[t]here is no hardship to Defendant because a permanent injunction will do no more than prevent Defendant from engaging in further unlawful activity." (alteration in original)), *report and recommendation adopted*, 2020 WL 3972736 (S.D.N.Y. July 13, 2020).

Finally, "enjoining Defendant from downloading and distributing the Films would not disserve the public interest." *Strike 3 Holdings, LLC*, 2020 WL 6875260, at *4 (citing *Beastie*

*Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 679 (S.D.N.Y. 2015)).  "[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work so as to encourage the production of creative work." *Malibu Media, LLC v. Doe*, No. 19-CV-3806 (DRH) (SIL), 2020 WL 8093340, at *4 (E.D.N.Y. Dec. 2, 2020) (quoting *Beastie Boys*, 87 F. Supp. 3d at 679).. A permanent injunction will serve the public interest because "it will protect copyrighted material and encourage compliance with the Copyright Act." *Baker*, 2020 WL 3978302, at *7.

Accordingly, this Court respectfully recommends that Plaintiff's request for a permanent injunction prohibiting Defendant from further infringement of the Films be granted. This Court further respectfully recommends that Defendant be ordered to delete and permanently remove the Films, and the digital media files relating to Plaintiff's Films, from each of the computers under Defendant's possession, custody, or control. *See* 17 U.S.C. § 503(b) (authorizing courts to order the destruction of unauthorized copies of copyrighted works); *see also Strike 3 Holdings LLC*, 2020 WL 6875260, at *5 (recommending that court grant request for an injunction directing destruction of unauthorized copies).

### B.    Statutory Damages

Plaintiff seeks statutory damages under 17 U.S.C. § 504(c) in the amount of $33,750.00, which constitutes the minimum statutory damages permitted for the 45 Films. *See* Dkt. No. 12, at 11; Dkt. No. 26-7, at 2.

Statutory damages are available to copyright owners who registered their copyright "[three] months after the first publication of the work or [one] month after the copyright owner . . . learned of the infringement[.]" 17 U.S.C. § 412; *see also Strike 3 Holdings, LLC*, 2020 WL 6875260, at *3; *Millennium TGA, Inc. v. Leon*, No. 12-CV-1360 (MKB), 2013 WL 5719079, at *9 (E.D.N.Y. Oct. 18, 2013) (citing 17 U.S.C. § 412). Plaintiff is eligible for statutory damages because the

copyrights to all 45 Films were registered either three months after the first publication of the Film or one month after the date of infringement. *See* 17 U.S.C. § 412; *see also* Dkt. No. 12-1 (listing registration, infringement, and publication date for each Film).

The Copyright Act provides for statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just" for unintentional infringement and up to $150,000.00 for willful infringement. 17 U.S.C. § 504(c)(1)-(2). Courts have "wide discretion" in determining the amount of statutory damages to award. *Greenwood*, 2019 WL 7580083, at *3 (citing *Fitzgerald Publ'g Co. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1116 (2d Cir. 1986)).

In determining the amount of statutory damages, courts in this Circuit consider the following factors:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Strike 3 Holdings LLC*, 2020 WL 6875260, at *3 (quoting *Myeress v. Elite Travel Group USA*, No. 18-CV-340 (AJN), 2018 WL 5961424, at *3 (S.D.N.Y. Nov. 14, 2018)). "[W]hen a defendant has acted willfully, a court should consider incorporating both a compensatory and punitive component to discourage further wrongdoing by the defendants and others." *Whitehead v. Mix Unit, LLC*, No. 17-CV-9476 (VSB) (JLC), 2019 WL 384446, at *3 (S.D.N.Y. Jan. 31, 2019) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019).

Here, "[i]n light of Defendant's default, it is impossible for the Court to ascertain what, if any, profits Defendant earned by infringing (factor two) or the value of the infringing material (factor five)." *Strike 3 Holdings LLC*, 2020 WL 6875260, at *3. "Further, Plaintiff has provided

no information regarding revenue it lost as a result of Defendant's infringement (factor three)." *Id.* "Nonetheless, the Court can evaluate Defendant's state of mind and conduct from his default (factors one and six), as well as the deterrent effect of damages on Defendant (factor four)." *Id.*

Regarding factors one and six, the Court can infer from Defendant's default that Defendant willfully infringed upon Plaintiff's copyright. *See Strike 3 Holdings LLC*, 2020 WL 6875260, at *3 ("[B]ased on [d]efendant's default, the Court may infer that his infringement was willful."); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011) ("Courts frequently infer willfulness where a defendant defaults."). Regarding factor four, "the need to deter is great in cases where infringers, like [d]efendant, through the use of internet downloads, work with others to infringe copyrights." *Strike 3 Holdings LLC*, 2020 WL 6875260, at *3; *Greenwood*, 2019 WL 7580083, at *4 (finding that deterrent effect on defendant—who had used BitTorrent to download and copy copyrighted works—and other potential infringers justified a "significant award"). The satisfaction of factors one, four, and six is sufficient to support an award of statutory damages. *See Strike 3 Holdings, LLC*, 18-CV-7323 (DRH) (SIL), 2021 WL 4896862, at *4 (E.D.N.Y. Sept. 20, 2021), *report and recommendation adopted*, 2021 WL 4894161 (E.D.N.Y. Oct. 20, 2021); *Malibu Media, LLC*, 2020 WL 8093340, at *4.

Moreover, Plaintiff requests the minimum statutory amount permitted under the Copyright Act—$750.00—for each work infringed. *See* Dkt. No. 12, at 11; *see also* Dkt. No. 26-7, at 2. Plaintiff's recovery sought is reasonable and in line with other statutory damages awards received by Plaintiff in similar cases brought in this Court and other courts across the country. *See Strike 3 Holdings, LLC*, 2021 WL 4896862, at *4 (awarding Plaintiff minimum statutory damages in the amount of $750.00 per infringement); *Strike 3 Holdings LLC*, 2020 WL 6875260, at *3 (same); *see also Strike 3 Holdings, LLC v. Doe*, No. 21-CV-15681 (WJM), 2022 WL 16744122, at *4

(D.N.J. Nov. 7, 2022) (awarding $750.00 per infringement); *Strike 3 Holdings, LLC v. Sellers*, 18-CV-00956 (TJM), 2019 WL 5387450, at *2 (N.D.N.Y. Oct. 22, 2019) (same); *Strike 3 Holdings, LLC v. Doe*, No. 18-CV-01173 (TSH), 2019 WL 1277561, at *7 (N.D. Cal. Mar. 20, 2019) ("Strike 3 is requesting the minimum statutory amount permitted under the Copyright Act - $750 for each work infringed . . . Thus, the recovery sought is reasonable.").

Accordingly, this Court respectfully recommends that Plaintiff be awarded minimum statutory damages in the total amount of $33,750.00, representing $750.00 for each infringement of the 45 Films.  The Court can enter this award without conducting a damages hearing.  *See U2 Home Ent., Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 318 (E.D.N.Y. 2007) (holding that a damages hearing was not warranted where plaintiff sought a permanent injunction and the minimum statutory damages for defendant's copyright violations); *see also Frost & Miller, LLP v. Heaven's Way Inv. Tr.*, No. 21-CV-6648 (AT) (BCM), 2022 WL 540070, at *2 (S.D.N.Y. Feb. 22, 2022) ("The Court may conduct the inquiry based solely upon the written submissions before it, *see Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (separate damages hearing not required), or may schedule an evidentiary hearing as to damages.").

### C.    Attorneys' Fees and Costs

In any civil action under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505.

Here, Plaintiff seeks an award of costs in the amount of $592.00, comprised of a $350 statutory filing fee, a $52 administrative fee, and $190 in service charges.  *See* Dkt. No. 26-1, at 32; Dkt. No. 26-7, at 2.  Plaintiff's request is supported by the process server's invoice, counsel's proof of payment, and Plaintiff's attorney's affirmation of the costs incurred.  *See* Dkt. No. 26-2 ¶

15, *id.* at 8-10.  Plaintiff's request is further verified by the docket.  *See, e.g., Strike 3 Holdings, LLC*, 2021 WL 4896862, at *4 (citation omitted); *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920 (KAM) (VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (holding that filing fees are recoverable without supporting documentation if verified by the docket); Dkt. No. 1 (indicating that $402.00 filing fee was paid).

The Court notes that the Copyright Act also provides that a prevailing party may recover attorneys' fees. 17 U.S.C. § 505 ([T]he court may . . . award a reasonable attorney's fee to the prevailing party[.]).  Plaintiff, however, is not seeking attorney's fees here in its motion for default judgment.  Indeed, Plaintiff fails to include an affidavit listing (i) the names of each attorney and staff member who worked on the action; (ii) the number of hours billed per attorney and staff member; (iii) the rate at which each attorney and staff member billed; and (iv) the total monetary amount requested per attorney and staff member for work performed.  Further, Plaintiff fails to include contemporaneous time records that specify "the date, the hours expended, and the nature of the work done" in this action.  *N.Y. State Ass'n v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Nor does Plaintiff provide the biographical information for each attorney and staff member for whom fees are sought, consistent with the Local Civil Rules.

Accordingly, this Court respectfully recommends that Plaintiff be awarded no attorney's fees but awarded costs in the amount of $592.00.

### D.    Post-Judgment Interest

Finally, Plaintiff seeks, and is entitled to, post-judgment interest as of right.  *See* Dkt. No. 26-1, at 32; Dkt. No. 26-7, at 2; *see also* 28 U.S.C. § 1961.  "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered."  *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011

WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see also Strike 3 Holdings, LLC*, 2021 WL 4896862, at *5; *Malibu Media, LLC*, 2020 WL 8093340, at *5 (awarding post-judgment interest in a copyright infringement case).

Accordingly, this Court respectfully recommends that Plaintiff be awarded post-judgment interest at the current legal rate allowed and accruing under 28 U.S.C. § 1961(a), from the date of the entry of judgment in this case until Defendant has satisfied the judgment.

## VIII.   Defendant's Identity

Finally, Plaintiff requests that the Court enter judgment against Defendant on the public docket. *See* Dkt. No. 26-1, at 32-34. Plaintiff does not, however, take any "position on whether the Court should also unseal the pleadings, . . . and other documents, and this motion, which have been filed either '*ex part*e' or 'under seal.'" *Id.* at 34.

The Second Circuit has "consistently recognized a 'strong presumption . . . under both the common law and the First Amendment' that judicial documents—and especially judicial *decisions*, which 'are used to determine litigants' substantive legal rights'—'should . . . be subject to public scrutiny.'" *In re Demetriades*, 58 F.4th 37, 46 (2d Cir. 2023) (quoting *Lugosch v. Pyramid Co.*, 435 F.3d 110, 121 (2d Cir. 2006)). "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quotation omitted); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (requiring that a court make specific, rigorous findings before sealing a document or otherwise denying public access). "Higher values that may justify the sealing of documents include national security concerns, attorney-client privilege, law enforcement interests, or the privacy interests of

third-parties." *Delta Air Lines, Inc. v. Bombardier, Inc.*, 462 F. Supp. 3d 354, 357 (S.D.N.Y. 2020).

Reputational harm does not, however, constitute a "higher value" justifying the sealing of documents. *In re Demetriades*, 58 F.4th at 46 (finding that attorney's interest in avoiding reputational harm could not meet the "weighty standard for overriding the presumptions of open records and public access" in attorney misconduct case (citation omitted)); *see Strike 3 Holdings, LLC v. Doe*, No. 22-CV-1138 (HG) (RMM), 2022 WL 17623941, at *2 (E.D.N.Y. Dec. 13, 2022) ("Lawsuits are public events and the risk that a party may suffer some embarrassment is not enough to justify anonymity." (citation omitted)); *Stankiewicz v. Universal Commerce Corp.*, No. 16-CV-2050 (JGK), 2017 WL 3671040, at *1 (S.D.N.Y. Aug. 9, 2017) (same). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

In similar cases brought in this district by Plaintiff, courts have ordered Plaintiff to file an unredacted version of the amended complaint and directed the Clerk of Court to substitute the name of the defendant for John Doe in the caption upon defendant's failure to appear in the case and show cause why their identifying information should not be made available on the public docket. *See, e.g.*, *Banigo*, 23-CV-5664 (HG) (LB), Jan 8. 2024 Dkt. Order; *see also Strike 3 Holdings, LLC, v. Doe*, 2022 WL 17623941, at *2 (ordering plaintiff to file an unredacted copy of the complaint that includes defendant's identity on the public docket).

Courts have also entered default judgment on the public docket and ordered the Clerk of Court to amend the caption of the case upon entry of judgment without unsealing the documents filed in the case. *See, e.g.*, *Strike 3 Holdings, LLC v. Ruiz*, 18-CV-7323 (DRH) (SIL), Dkt. No. 23

(E.D.N.Y. Sept. 20, 2021); *Strike 3 Holdings, LLC v. Heloskie*, 18-CV-5305 (DRH) (SIL), Dkt. No. 23 (E.D.N.Y. Jan. 1, 2021).

Finally, courts in other districts have unsealed the entire docket and ordered the Clerk of Court to amend the case caption upon the entry of default judgment. *See, e.g.*, *Strike 3 Holdings, L.L.C. v. Wise*, No. 20-CV-00942 (TJH) (SPX), 2022 WL 393594, at *3 (C.D. Cal. Feb. 7, 2022) (granting default judgment and ordering clerk to unseal case and amend caption); *Strike 3 Holdings, LLC v. Vokoun*, No. 12-CV-14321 (NLH) (AMD), 2022 WL 310201, at *6 (D.N.J. Feb. 2, 2022) (same); *Strike 3 Holdings, LLC*, 2022 WL 16744122, at *4 (granting default judgment, unsealing documents, and directing clerk to remove the pseudonym in the case caption to identify the defendant by name because by not appearing in the action, defendant had failed to meet its burden of demonstrating that documents should remain under seal).

Here, the Court previously ordered—at Plaintiff's request—that documents identifying Defendant in this matter should not be made available on the public docket until Defendant was served with process and afforded an opportunity to be heard on whether that sealing should continue throughout the litigation. *See* Dkt. No. 6-1, at 25; *see also* Dkt. No. 11 ¶¶ 1-6. In accordance with this order, Plaintiff has filed documents both publicly with redactions and under seal or *ex parte* without redactions. "Although granted ample opportunity to do so, [D]efendant has failed to come forward to make a showing as to his [] need for privacy. In these circumstances, the presumption of public access has not been overcome." *Strike 3 Holdings, LLC*, 2022 WL 17623941, at *2.

At bottom, Defendant has failed to come forward and make a showing that his need for privacy outweighs the presumption of public access afforded to all judicial documents. *See In re Demetriades*, 58 F.4th at 46. Absent any showing by Defendant, this Court cannot make the

specific, rigorous findings that are necessary to deny public access to the documents in this case. *See Bernstein*, 814 F.3d at 141.

Accordingly, this Court respectfully recommends that the documents in this case should be unsealed and that the caption should be amended to reflect the true identity of Defendant. *See, e.g.*, *Banigo*, 23-CV-5664 (HG) (LB), Jan 8. 2024 Dkt. Order; *Strike 3 Holdings, LLC*, 2022 WL 17623941, at *2; *Strike 3 Holdings, LLC*, 2022 WL 16744122, at *4; *Wise*, 2022 WL 393594, at *3; *Vokoun*, 2022 WL 310201, at *6.

## IX.    <u>Conclusion</u>

For the reasons set forth above, this Court respectfully recommends that Plaintiff's motion for default judgment be granted and that the Court enter an order: (1) permanently enjoining Defendant from continuing to infringe on Plaintiff's copyrighted Films, pursuant to 17 U.S.C. § 503; (2) directing Defendant to delete and permanently remove the Films, and digital media files relating to Plaintiff's Films, from each of the computers under Defendant's possession, custody, or control, pursuant to 17 U.S.C. § 503(b); (3) awarding Plaintiff the amount of $33,750.00, which represents the minimum statutory damages permitted for the 45 copyrighted Films that Defendant infringed upon, pursuant to 17 U.S.C. § 504(a) and (c); (4) awarding Plaintiff costs in the amount of $592.00, pursuant to 17 U.S.C. § 505; and (5) awarding Plaintiff post-judgment interest at the current legal rate allowed and accruing, pursuant to 28 U.S.C. § 1961, as of the date default judgment is entered until the date of its satisfaction.

This Court further respectfully recommends that the documents in this case be unsealed and the caption amended to reflect the true identity of Defendant.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation on Defendant by overnight mail and first-class mail and to file proof of service on ECF by July 12, 2024.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Vitaliano. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York
            July 11, 2024

**SO ORDERED.**

  _/s/ Joseph A. Marutollo_
  JOSEPH A. MARUTOLLO
  United States Magistrate Judge